FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 19, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RYAN F.,<br><br>                    Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO. 2:24-CV-0398-TOR<br><br>ORDER GRANTING PLAINTIFF'S<br>BRIEF |

BEFORE THE COURT are the parties' briefs seeking judgment in this case. ECF Nos. 7, 9. The briefing was submitted for consideration without oral argument. The Court has reviewed the administrative record and the parties' completed briefing and is fully informed. For the reasons discussed below, Plaintiff's Opening Brief (ECF No. 7) is **GRANTED** and the Commissioner's Brief is (ECF No. 9) is **DENIED**.

## JURISDICTION

The Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

ORDER GRANTING PLAINTIFF'S BRIEF ~ 1

1

**STANDARD OF REVIEW**

2        A district court's review of a final decision of the Commissioner of Social

3   Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

4   limited: the Commissioner's decision will be disturbed "only if it is not supported

5   by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

6   1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means

7   relevant evidence that "a reasonable mind might accept as adequate to support a

8   conclusion." *Id.* at 1159 (quotation and citation omitted).  Stated differently,

9   substantial evidence equates to "more than a mere scintilla[,] but less than a

10  preponderance." *Id.* (quotation and citation omitted).  In determining whether this

11  standard has been satisfied, a reviewing court must consider the entire record as a

12  whole rather than searching for supporting evidence in isolation.  *Id.*

13        In reviewing a denial of benefits, a district court may not substitute its

14  judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152,

15  1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

16  rational interpretation, [the court] must uphold the ALJ's findings if they are

17  supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674

18  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an

19  ALJ's decision on account of an error that is harmless." *Id.*  An error is harmless

20  "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

### FIVE STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that [he or she] is not only unable to do [his or her] previous work[,] but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

1    If the claimant is not engaged in substantial gainful activities, the analysis

2    proceeds to step two.  At this step, the Commissioner considers the severity of the

3    claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers

4    from "any impairment or combination of impairments which significantly limits

5    [his or her] physical or mental ability to do basic work activities," the analysis

6    proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment

7    does not satisfy this severity threshold, however, the Commissioner must find that

8    the claimant is not disabled.  *Id.*

9    At step three, the Commissioner compares the claimant's impairment to

10    several impairments recognized by the Commissioner to be so severe as to

11    preclude a person from engaging in substantial gainful activity.  20 C.F.R.

12    § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the

13    enumerated impairments, the Commissioner must find the claimant disabled and

14    award benefits.  20 C.F.R. § 404.1520(d).

15    If the severity of the claimant's impairment does meet or exceed the severity

16    of the enumerated impairments, the Commissioner must pause to assess the

17    claimant's "residual functional capacity."  Residual functional capacity ("RFC"),

18    defined generally as the claimant's ability to perform physical and mental work

19    activities on a sustained basis despite his or her limitations (20 C.F.R.

20    § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

ORDER GRANTING PLAINTIFF'S BRIEF ~ 4

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy."  20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On December 17, 2021, Plaintiff filed both an application for Title II disability insurance benefits and a Title XVI application for supplemental security income, alleging an onset date of August 25, 2021.  Tr. 22.  These applications were denied initially on August 29, 2022, and upon reconsideration on January 23, 2023.  Tr. 105, 115.  Plaintiff appeared at a hearing before an administrative law judge ("ALJ") on March 13, 2024.  Tr. 44-71.  On April 22, 2024, the ALJ denied Plaintiff's claim.  Tr. 22-38.

As a threshold matter, the ALJ found the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026.  Tr. 24.  At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since August 25, 2021, the alleged onset date.  *Id.*  At step two, the ALJ found the Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, chronic pain, dyslexia, depression, and anxiety.  *Id.*  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 25-26.  The ALJ then found Plaintiff had the RFC to perform sedentary work with the following limitations:

1
2
3
4
5

he can occasionally perform postural activities but never climb ladders, ropes, or scaffolds. He can reach in all directions with the right upper extremity frequently. He must avoid concentrated exposure to industrial vibration and avoid moderate exposure to hazards such as unprotected heights and dangerous moving machinery. He is able to maintain concentration, persistence, and pace on simple, routine tasks, for the 2-hour intervals between regularly scheduled breaks. He can adapt to simple work-related changes. Reading should not be an essential function of the job.

6

Tr. 30.

7

At step four, the ALJ found Plaintiff was not capable of performing any past

8

relevant work. Tr. 36. At step five, the ALJ found that, considering Plaintiffs age,

9

education, work experience, RFC, and testimony from a vocational expert, there

10

were other jobs that existed in significant numbers in the national economy that

11

Plaintiff could perform through the date of the ALJ's decision, such as lens

12

inserter, final assembler, and table worker. Tr. 37. The ALJ concluded Plaintiff

13

was not under a disability, as defined under the Social Security Act, from August

14

25, 2021, the alleged onset date, through April 22, 2024, the date of the ALJ's

15

decision. *Id.*

16

On September 23, 2024, the Appeals Council denied review, Tr. 1-4, making

17

the ALJ's decision the Commissioner's final decision for purposes of judicial

18

review. *See* 20 C.F.R. §§ 404.981, 422.210.

19

**ISSUES**

20

ORDER GRANTING PLAINTIFF'S BRIEF ~ 7

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability benefits under Title II and XVI of the Social Security Act.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed Plaintiff's symptom testimony;

2. Whether the ALJ properly weighed the lay witness testimony; and

3. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 7 at 1-2.

**DISCUSSION**

**A. Plaintiff's Symptom Testimony**

Plaintiff contends the ALJ failed to rely on clear and convincing reasons to discredit his physical symptom testimony.  ECF No. 7 at 3-13.

An ALJ engages in a two-step analysis to determine whether to discount a claimant's testimony regarding subjective symptoms.  SSR 16-3p, 2016 WL 1119029, at *2.  "First, the ALJ must determine whether there is 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'"  *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)).  "The claimant is not required to show that [the claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the

symptom.'"  *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted).  General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) (requiring the ALJ to sufficiently explain why he or she discounted claimant's symptom claims).  "The clear and convincing [evidence] standard is the most demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has

1  received for relief of pain or other symptoms; (6) any measures other than

2  treatment an individual uses or has used to relieve pain or other symptoms; and (7)

3  any other factors concerning an individual's functional limitations and restrictions

4  due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7-*8; 20

5  C.F.R. § 404.1529(c).  The ALJ is instructed to "consider all of the evidence in an

6  individual's record," "to determine how symptoms limit ability to perform work-

7  related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

8      *1. Inconsistent Objective Medical Evidence*

9          Plaintiff first argues the ALJ improperly discounted Plaintiff's subjective

10  symptom testimony on the basis it was unsupported by objective medical evidence.

11  ECF No. 7 at 5.

12          While an ALJ may not demand "positive objective medical evidence 'fully

13  corroborat[ing]' ever allegation within the subjective testimony," an ALJ may

14  discount subjective testimony on the basis it is inconsistent with objective medical

15  evidence in the record.  *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022)

16  (quoting *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005)).  In doing so, an

17  ALJ must "specifically identify the testimony [from a claimant] she or he finds not

18  to be credible and . . . explain what evidence undermines the testimony."  *Holohan*

19  *v. Massanari,* 246 F.3d 1195, 1208 (9th Cir. 2001).  The ALJ is not required "to

20  perform a line-by-line exegesis of the claimant's testimony [or] to draft

ORDER GRANTING PLAINTIFF'S BRIEF ~ 10

1    dissertations when denying benefits." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th

2    Cir. 2020).  However, he or she must provide rationale clear enough that permits

3    the Court meaningful review of the ALJ's decision.  *Id.*

4        Here, the ALJ summarized Plaintiff's symptom testimony as to his physical

5    impairments:

> The claimant alleges disability due to stenosis of the spine, constant
> pain in his back and groin, an inability to read or write, herniated discs,
> right dominant shoulder pain, status post-surgery, numbness in his left
> leg, sciatica, depression, and anxiety.  The claimant testified that he
> experiences significant pain as a result of his impairments.  He noted
> that any movement caused pain in his back and in his legs.  He stated
> that no position was comfortable and he indicated that he has to
> constantly shift position due to pain.  He noted that he has to lie down
> frequently due to his symptoms.  He indicated that he also had problems
> with his hands and arms that limit his ability to carry things. He also
> had problems with reaching as well.  He stated that he could only stand
> for about 5 to 10 minutes and he could only walk for about 100 feet
> before he had to stop and rest.  He indicated that he could only lift and
> carry about 5 pounds or maybe a gallon of milk due to his symptoms.

14   Tr. 31.

15   The ALJ then concluded that while Plaintiff's medically determinable impairments

16   could reasonably cause the alleged symptoms, Plaintiff's "statements concerning

17   the intensity, persistence and limiting effects of these symptoms are not entirely

18   consistent with the medical evidence and other evidence in the record."  *Id.*  The

19   ALJ goes on to restate that Plaintiff's statements are inconsistent with the medical

20   evidence of the record before summarizing medical evidence between 2019 and

2023 related to Plaintiff's back and upper and lower extremities.  Tr. 31-32.

However, the ALJ never connects what testimony was inconsistent with the

medical evidence.  Additionally she often listed both the normal and abnormal

findings.

For example, the ALJ noted that an MRI of Plaintiff's spine from November

2020, "showed canal stenosis, spondylotic changes, recess stenosis, and disc

protrusions."  Tr. 31.  But an exam a year later showed Plaintiff with normal

cervical and thoracic ranges of motion, no muscle spasms, normal motor, normal

strength, intact reflexes, normal sensations, and normal gait but decreased lumbar

ranges of motor and he had pain.  *Id.*  The ALJ further noted that in March 2022,

Plaintiff had "left lower extremity weakness, he had an antalgic gait, and he had

tenderness but his reflexes were normal, his sensations were normal, and he had

normal ranges of motion."  *Id.*  The ALJ also noted that a December 2022 exam

showed Plaintiff "required nothing for ambulation, he was ambulating without

analgia, and he had full ranges of motion but he had knee pain."  Tr. 32.  However,

an MRI taken a few days prior revealed that Plaintiff's "lumbar spine showed

[moderate to severe] spinal canal stenosis, mild neural foraminal narrowing at

multiple levels, and degenerative changes."  *Id.*  Additionally, the ALJ noted that

an exam in July 2022 showed Plaintiff with 4/5 and 5/5 strength but did not specify

that this was referring to Plaintiff's right and left shoulder push/pull strength or

note that Plaintiff's left quadricep strength was 3/5 and right was 4/5 at the same exam, however, the ALJ did note that Plaintiff had an antalgic gait, had pain, and a positive straight leg raising test. *Id.*

While some of the medical evidence may be inconsistent with the degree of limitations alleged by Plaintiff, the ALJ never connects the inconsistent portions of the record to aspects of Plaintiff's testimony the ALJ found to not be credible and explain why the two are incongruent. *Smartt*, 53 F.4th at 497. Moreover, the ALJ reiterates the inconsistency of the medical evidence after assessing the medical opinion evidence but again does not explain what testimony was undermined:

> While claimant does have degenerative disc disease of the lumbar spine, chronic pain, dyslexia, depression, and anxiety, the actual objective findings on examination are not so significant so as to render him more limited than noted above. Physically, while there are objective findings, his symptoms have generally improved with treatment. Further, his examinations were longitudinally benign and showed that he had normal cervical and thoracic ranges of motion, he had no muscle spasms, he had normal motor, he had normal strength, he had normal sensations, his reflexes were intact, and his gait was normal but he had decreased lumbar ranges of motor and he had pain (Exhibit 1F/115-116). A subsequent examination showed that he had 5/5 strength, he had normal reflexes, his coordination was normal, he had a negative straight leg raising test on the right, and he had a negative Babinski test but he had pain and tenderness and he had muscle spasms (Exhibit 13F/19, 15F). The same does not correlate to the level of debilitating limitations reported by the claimant.

This explanation does not provide the requisite *specific*, clear, and convincing reasons for rejecting Plaintiff's subjective pain testimony. *Lambert*, 980 F.3d at

1    1277.  The ALJ also appears to impermissibly discount Plaintiff's testimony on the

2    basis the alleged severity is not supported by objective medical evidence.  *Riddick*

3    *v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("Once the claimant produces medical

4    evidence of an underlying impairment, the Commissioner may not discredit the

5    claimant's testimony as to the severity of symptoms merely because they are

6    unsupported by objective medical evidence.").  However, these errors may be

7    harmless where she adequately discounted Plaintiff's testimony on another basis.

8    *Lambert*, 980 F.3d at 1278.

9        *2. Improvement with Conservative Treatments*

10           In addition to the cited medical evidence, the ALJ also discounted Plaintiff's

11    testimony by finding Plaintiff's treatment "mostly routine and conservative"

12    including by "medication, injections, and physical therapy with some relief from

13    his symptoms."  TR. 35, 32. "[E]vidence of 'conservative treatment' is sufficient to

14    discount a claimant's testimony regarding severity of an impairment." *Parra v.*

15    *Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d

16    1428, 1434 (9th Cir. 1995)).

17           Plaintiff contends substantial evidence does not support the ALJ's findings

18    of conservative treatment and argues Plaintiff undergoing repeated steroid epidural

19    injections and use of opioids, such as Tramadol, for pain management are not

20    conservative.  ECF No. 7 at 9-10.  Defendant counters with citations to two

1  California district court decisions concluding Tramadol and other pain

2  management medication do fall under conservative treatment.  ECF No. 9 at 8.  *See*

3  *also Wallace v. Berryhill*, No. 5:16-CV-02064-KES, 2017 WL 3835169, at *6

4  (C.D. Cal. Aug. 31, 2017); *Kelly v. Colvin*, 15-cv-06154-KES, 2016 WL 4770020,

5  at *4 (C.D. Cal. Sept. 13, 2016).  Plaintiff responds that Defendant does not

6  contradict Plaintiff's argument that epidural steroid injections were unreasonably

7  characterized as "conservative."  ECF No. 10 at 5.

8      Other court decisions out of this district are generally skeptical of an ALJ's

9  conclusion that epidural steroid injections to treat degenerative disc disease

10  constitute "conservative treatment."  *See, e.g.*, *Carissa F. v. Kijakazi*, No. 1:21-

11  CV-03148-LRS, 2023 WL 6299830, at *6 (E.D. Wash. Sept. 27, 2023) (finding

12  ALJ's conclusion the plaintiff received conservative treatment was not

13  substantially supported where the treatments included steroid injections, facet

14  blocks, and targeted injections); *Drew v. Colvin*, No. CV-12-3080-RHW, 2014 WL

15  5304960, at *5 (E.D. Wash. Oct. 15, 2014) ("Cases where courts refuse to find a

16  treatment course to be conservative generally involve medication not available

17  over-the-counter, steroid injections, epidural shots, etc.").  However, even if the

18  Court were to conclude epidural steroid injections was conservative treatment, an

19  ALJ cannot discount a claimant's subjective symptom testimony for that reason

20  where a more aggressive treatment option was not available.  *See Trevizo v.*

1    *Berryhill*, 871 F.3d 664, 677–80 (9th Cir. 2017) (finding that a physician's failure

2    to recommend a more aggressive course of treatment is not a legitimate reason by

3    itself to discount the physician's medical opinion about the extent of the disability);

4    *see also Lapeirre Gutt v. Astrue*, 382 F. App'x 662, 664 (9th Cir. 2010)

5    (unpublished) ("A claimant cannot be discredited for failing to pursue non-

6    conservative treatment options where none exist".).

7         The ALJ did not discuss what more aggressive treatment options were

8    available that Plaintiff failed to pursue.  Further, the ALJ even acknowledged that

9    surgery was not an available option as of April 2023.  Tr. 32, 1804.  Although the

10   ALJ failed to note it was discussed a month later as a possible option once Plaintiff

11   exhausted all other available treatment options and even then, it was not

12   guaranteed to provide significant relief.  Tr. 1749.  The record reflects Plaintiff

13   pursued the treatment options available to him: pain medication, physical therapy,

14   and injections.  *See* Tr. 258, 324, 1497, 1708, 1801, 2008.  Thus, the ALJ

15   discounting Plaintiff's subjective symptom testimony on the basis of "conservative

16   treatments" without more is untenable and not substantially supported.

17        Plaintiff further disagrees with the ALJ's conclusion that Plaintiff's

18   "symptoms have generally improved with treatment."  ECF No. 7 at 10.  Plaintiff

19   argues the record does not reflect effective pain relief that was inconsistent with

20   Plaintiff's testimony.  *Id.*  Plaintiff cites to a pain management specialist treatment

record from November 2023, where Plaintiff reported increased pain in his thighs and difficulty walking. Tr. 1854. The treating physician refilled Plaintiff's pain medication, noting he been stable on his medication, but planned to move forward with an epidural steroid injection. *Id.* Defendant argues the record does reflect general improvement with treatment and cites to a string of records reflecting Plaintiff as "stable" with treatment. ECF No. 9 at 7. Plaintiff counters Defendant's reasoning is an unreasonable interpretation of the record and use of the word "stable" does not mean Plaintiff's chronic back had improved. ECF No. 10 at 5. Plaintiff also argues Defendant's attempt to fill in the gaps in the ALJ's reasoning is improper *post hoc* rationalizations that the Court cannot consider. *Id.*

In reviewing an ALJ's decision, the Court is "constrained to review the reasons the ALJ asserts" and "may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003); *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). Here the ALJ stated both that Plaintiff's treatments provided "some relief from his symptoms" and his symptoms "generally improved with treatment." Tr. 32, 35. Yet the ALJ did not cite to specific evidence in the record but listed 1F and 14F as support which make up a combined total of 459 pages of the record. Tr. 317-661, 1687-1800. Additionally, a review of the record reveals Plaintiff often reported no improvement or much relief with treatment or

such relief was short term.  Tr. 325, 364, 421, 422, 476, 481, 745, 968.  The ALJ's

conclusion that Plaintiff's symptoms improved with treatment is not substantially

supported.

### 3. Activities of Daily Living

Finally, the ALJ discounted Plaintiff's symptom testimony on the basis that

it was inconsistent with Plaintiff's daily activities:

> In terms of claimant's daily activities, the claimant is essentially
> independent and able to perform a wide array of activities despite his
> impairments.  The clamant stated that he could bathe, dress, and take
> care of himself, he could do light household chores, he can prepare
> simple meals, he could drive a vehicle, and he could shop in stores.  He
> had no problems getting along with others, he could pay attention, and
> he could follow instructions (Exhibit 6E, 5F and Hearing Testimony).
> This level of activity is not consistent with allegations of severe and
> debilitating physical and mental symptomatology.

Tr. 35-36.

A review of the records the ALJ referenced in support does not reflect

Plaintiff as "essentially independent and able to perform a wide array of activities."

Tr. 35.  Plaintiff reported that he lived with his father and brother who help with

the bulk of Plaintiff's daily activities including cooking meals, doing laundry, and

going grocery shopping once or twice a month.  Tr. 258, 259, 58.  Plaintiff testified

that he had issues with driving due to pain from stepping on the pedals and turning

the steering wheel.  Tr. 49-50.  Plaintiff's father was even reported as his driver in

1    one of the records the ALJ relied on (5F).  Tr. 920.  The only activity Plaintiff

2    reported as doing independently was bathing and dressing himself.  Tr. 921.

3        Defendant focuses in on Plaintiff's testimony that he had a hard time getting

4    along with others despite noting in his function report that he got along with others

5    just fine.  ECF No. 9 at 9.  Defendant argues this conflict supports the ALJ's

6    finding that Plaintiff's daily activities were not consistent with his alleged

7    symptoms.  *Id.*  However the ALJ did not appear to rely on any such discrepancy

8    or even note it.  Moreover the ALJ's reference to Plaintiff's ability to get along

9    with others, pay attention, and follow instructions was used to discount Plaintiff's

10   mental impairment symptom testimony, not his physical impairment symptoms.

11   Tr. 35.  Plaintiff is only challenging the ALJ's findings as to his physical

12   impairments.  The ALJ's conclusion that Plaintiff's activities of daily living were

13   inconsistent with his alleged physical symptoms was not substantially supported by

14   evidence from the record.

15       The Court finds the ALJ's overall credibility finding was not supported by

16   substantial evidence.  Such error was not harmless.  Plaintiff testified that

17   movement caused him pain, he had a hard time bending over, he struggled

18   reaching in any direction with his right arm, and often dropped things.  Tr. 50, 53,

19   55-57.  The vocational expert testified that a reduction in reaching with the right

20

1    upper extremity or fingering from frequently to only occasionally would rule out

2    all available sedentary jobs in the national economy.  Tr. 69-70.

3    **B. Lay Witness Statements**

4        Plaintiff argues the ALJ did not provide germane reasons in discounting the

5    opinions of Plaintiff's father, brother, and close friend.  ECF No. 7 at 13-14.

6        "In determining whether a claimant is disabled, an ALJ must consider lay

7    witness testimony concerning a claimant's ability to work." *Stout v. Comm'r,* 454

8    F.3d 1050, 1053 (9th Cir.2006).  "If an ALJ disregards the testimony of a lay

9    witness, the ALJ must provide reasons 'that are germane to each witness.'" *Bruce*

10   *v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting *Ngugyen v. Chater*, 100

11   F.3d 1462, 1467 (9th Cir. 1996)).  Such germane reasons must also be specific.

12   *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

13       Under the revised regulations, an ALJ is "not required to articulate how she

14   considered evidence from nonmedical sources."  20 C.F.R. § 404.1520.c(d).  The

15   Ninth Circuit recently held in *Hudnall v. Dudek*, 130 F.4th 668 (9th Cir. 2025) that

16   the revised regulations abrogate precedent requiring "germane reasons" to reject

17   lay witness testimony, however, that decision was withdrawn and vacated a month

18   later.  *Hudnall v. Dudek*, 133 F.4th 968 (9th Cir. 2025).  Therefore, the Court

19   concludes the ALJ must still provide germane reasons in discounting lay witness

20   testimony.  *See Connelly v. Colvin*, No. 23-35527, 2024 WL 5040994, at *2 (9th

Cir. Dec. 9, 2024) (unpublished) ("Assuming that ALJs must still, after the 2017 regulation amendments, offer reasons "germane to each witness" in order to reject lay evidence, the ALJ satisfied that obligation.") (internal citations omitted)).

The ALJ explained the statements provided by Plaintiff's friend, Brett Lopes, father, Joseph Franco, and brother, John Franco "note that the claimant's impairments have resulted in daily difficulties in performing chores, in attending his activities of daily living, and that he has difficulty performing work-related tasks due to his symptoms." Tr. 35. The ALJ rejected these opinions for the following reasons.

> While these statements describe daily activities that are limited, these statements are inconsistent with the longitudinal evidence of record. The limited activities outlined in these statements cannot be objectively verified with any reasonable degree of certainty given the claimant's overall findings on objective imaging and examinations as outlined above. While, these statements were considered, the undersigned concludes that the claimant is capable of performing sedentary work with the additional limitations noted above.

Tr. 35.

An ALJ may discount lay witness testimony on the basis it is inconsistent with the medical evidence if it is substantially supported. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ does not detail what evidence conflicts with the lay witness statements. Moreover, while all three statements do not describe any limitations not already described by Plaintiff, the Court found errors in the ALJ's

1    reasoning in discounting Plaintiff's testimony.  *See Molina v. Astrue*, 674 F.3d at

2    1117 ("Where lay witness testimony does not describe any limitations not already

3    described by the claimant . . . the ALJ's well-supported reasons for rejecting the

4    claimant's testimony apply equally well to the lay witness testimony.").  Therefore,

5    the Court finds the ALJ did not present germane reasons in rejecting Brett Lopes,

6    Joseph Franco, and John Franco's statements.  Each testimony should be evaluated

7    afresh on remand.

8    **C. Medical Opinion Evidence**

9        Plaintiff challenges the ALJ's evaluation of the medical opinions of P.A.

10   Agostinelli and Kara Walther, P.T.  ECF No. 7 at 14-17.

11       An ALJ must consider and evaluate the persuasiveness of all medical

12   opinions or prior administrative medical findings from medical sources.  20 C.F.R.

13   §§ 404.1520c(a)–(b).  The factors for evaluating the persuasiveness of medical

14   opinions and prior administrative medical findings include; supportability,

15   consistency, relationship with the claimant, specialization, and "other factors that

16   tend to support or contradict a medical opinion or prior administrative medical

17   finding," including but not limited to "evidence showing a medical source has

18   familiarity with the other evidence in the claim or an understanding of our

19   disability program's policies and evidentiary requirements."  20 C.F.R.

20   §§ 404.1520c(c)(1)–(5).

ORDER GRANTING PLAINTIFF'S BRIEF ~ 22

The ALJ is required to explain how the two most important factors, supportability and consistency, were considered. 20 C.F.R. § 404.1520c(b)(2). These factors are defined as follows:

> (1)    Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2)    Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2).

The ALJ may, but is not required to, explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(2).  However, where two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the most persuasive factors" were considered.  20 C.F.R. §§ 404.1520c(b)(2).

These regulations displace the Ninth Circuit's standard that require an ALJ to provide "specific and legitimate" reasons for rejecting an examining doctor's

1   opinion.  *Woods v. Kijakazi,* 32 F.4th 785, 787 (9th Cir. 2022).

2       *1. Ryan Angostinelli, PAC and Kara A. Walther, PT*

3       Ryan Angostinelli, a consultive examiner, examined Plaintiff on July 22,

4   2022.  Tr. 920.  He opined Plaintiff could stand for less than two hours during an

5   eight-hour workday, sit two to four hours, carry twenty pounds occasionally and

6   ten pounds frequently.  Tr. 923.  He had marked limitations in climbing stairs,

7   ladders, running, bending, and stooping due to chronic back pain, and marked

8   limitations with pushing and pulling, and reaching overhead.  *Id.*  And finally he

9   had marked limitations to exposure to unprotected heights and operating heavy

10  machinery.  *Id.*

11      Kara A. Walther, PT, a treatment provider of Plaintiff, provided an

12  assessment of Plaintiff on May 17, 2023.  Tr. 1740.  She opined Plaintiff had the

13  ability to lift 3.75 pounds and carry 2.5 pounds on a seldom basis.  *Id.*  Plaintiff

14  could walk 380 feet for a total of 2 minutes and 46 seconds, was limited to 35

15  minutes of sitting and 1 minute and 47 seconds of standing at a time.  *Id.*

16      The ALJ found both of these opinions unpersuasive due to not being

17  supported by the "longitudinal record, including the objective imaging and

18  longitudinal clinical exam findings."  Tr. 33.  The ALJ concluded the opinions

19      were not consistent with [Plaintiff's] clinical findings that reflect that
        he had normal cervical and thoracic ranges of motion, he had no muscle
20      spasms, he had normal motor, he had normal strength, he had normal
        sensations, his reflexes were intact, and his gait was normal but he had

decreased lumbar ranges of motor and he had pain (Exhibit 1F/115-116).  A subsequent examination showed that he had 5/5 strength, he had normal reflexes, his coordination was normal, he had a negative straight leg raising test on the right, and he had a negative Babinski test but he had pain and tenderness and he had muscle spasms (Exhibit 13F/19, 15F).

Tr. 33.

Plaintiff argues the ALJ's rejection of both medical opinions was not substantially supported because one of the records the ALJ relied on was from an examination eight months prior to the alleged disability onset date and the other single record does not reflect that the medical opinions were inconsistent with the "longitudinal record."  ECF No. 7 at 16.  Defendant argues the ALJ provided valid, discernable reasons in finding the opinion unpersuasive that were supported by substantial evidence.  ECF No. 9 at 14-15.

The Court finds the ALJ's rejection of Agostinelli and Walther's medical opinions was not supported by substantial evidence.  As an initial matter, the ALJ concluded the opinions were not supported by the longitudinal record because "his examinations only reflect pain and weakness along with range of motion deficits that supports limiting the claimant to sedentary work."  Tr. 33.  But the ALJ does not provide any citations to specific portions of the record in support or explain what evidence undermines Agostinelli's opinion that Plaintiff had marked limitations in pushing, pulling, or reaching overhead, or Walther's opinion that Plaintiff could not sit for longer than 35 minutes at a time.  Nor does the ALJ

discuss the extent to which the medical opinion findings were supported by the providers' own treatment notes. *Woods*, 32 F.4th 787 ("Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence.").

The Court also finds the ALJ failed to adequately address the consistency factor with regard to both medical opinions. The ALJ makes a generalized statement that the opinions are not consistent with clinical findings showing normal findings including no muscle spasms, normal strength and gait, but the ALJ only cited to one examination in the record, 1F/115-116, that occurred months before the alleged onset date. Additionally other evidence in the record contradicts these findings such as three subsequent examinations where Plaintiff presented with an abnormal or antalgic gait (Tr. 389, 949, 920) and evidence of reduced strength in his left and right quadriceps and right shoulder (Tr. 922). Furthermore the ALJ's only other reference to the record in evaluating Agostinelli and Walther's assessment indicated Plaintiff was suffering from muscle spasms. Tr. 33. Thus, the Court does not find that the examination that occurred eight months prior to the alleged onset date representative of the longitudinal of the record. Nor does the Court find the ALJ's single other reference to the record qualified as an explanation supported by substantial evidence for finding the opinions inconsistent. Therefore, on remand the ALJ will properly evaluate both Agostinelli

and Walther's medical opinions.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Opening Brief (ECF No. 7) is **GRANTED**. This case is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

2. Commissioner's Brief (ECF No. 9) is **DENIED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Plaintiff, provide copies to counsel, and **CLOSE** this file.

DATED May 19, 2025



THOMAS O. RICE
United States District Judge

ORDER GRANTING PLAINTIFF'S BRIEF ~ 27